# Preliminary Report

## MELISSA YATSKO ET AL. V. DEAN GRAZIOLLI, ET AL.

Jane Gray, PhD
JANE GRAY ASSOCIATES, LLC | [COMPANY ADDRESS]

December 4, 2019

Patrick Roche, Esq.
Collins, Roche, Utley & Garner, LLC
875 Westpoint Parkway, Suite 500
Cleveland, OH.  44145

Thomas J. Cabral, Esq.
Gallagher Sharp, LLP
Sixth Floor Bulkley Building
1501 Euclid Avenue
Cleveland, OH. 44115

**RE: *Melissa Yatsko, et al. v. Dean Graziolli, et al.***
    U.S. District Court, Northern District of Ohio, Eastern Division
    Case No. 1:18-CV-00814

Dear Mr. Roche:

This report and opinions contained herein are the results of my analysis of
the above case.  All opinions expressed herein are based on information that
is currently known to me.  Should additional information become available to
me in the future, these opinions may be subject to modification.


**Introduction/Background Facts**


On September 24, 2019, I was retained by Collins, Roche, Utley & Garner to
evaluate and assess materials relevant to the above referenced matter and to
offer an opinion regarding the foreseeability of the fatal shooting of Thomas
Yatsko by Dean Graziolli on January 13, 2018 at the Corner Alley located at
University Circle of Cleveland, Ohio,  otherwise known as Corner Alley
Uptown – hereafter referred to as Corner Alley.  Additionally, I was asked to
offer an opinion regarding the appropriateness of the subcontracting of off-
duty police officers to provide security at entertainment facilities.

1

On the evening of January 13, 2018, Thomas Yatsko and DeLeon McDuffie arrived at the Corner Alley located at 11409 Euclid Avenue, Cleveland, Ohio to celebrate DeLeon's 21st birthday. They arrived somewhere between 7:30 and 8:00 in the evening and surveillance video shows that the men played a number of games together, bowled, and consumed one alcoholic drink each. At approximately 10:15 PM, Yatsko and McDuffie got into an argument that culminated in a physical altercation.  Employees of the Corner Alley responded quickly, separated the men, and escorted McDuffie out of the front door.  A Corner Alley employee accompanied Yatsko upstairs to retrieve his coat, then escorted him outside, with the assistance of Dean Graziolli.

Shortly after their ejection from the Corner Alley, Yatsko and McDuffie once again engaged in a physical altercation on Euclid Avenue.  Witnessing this fight, a woman notified Graziolli at approximately 10:39 PM that there were two men fighting in the street.  Graziolli, by his own volition, left the Corner Alley and found Yatsko on top of McDuffie hitting and kicking him on Euclid Avenue.  Graziolli pulled Yatsko off of McDuffie then lost track of Yatsko while he helped McDuffie to his feet and assessed his medical needs. Inasmuch as the weather was extremely cold that evening, Graziolli made a decision to go back to the Corner Alley, where it was warm, to call for an ambulance and police backup rather than stay with McDuffie and use his cellphone to call for such assistance.

 Graziolli approached the Corner Alley front entrance and noted that Yatsko was standing on the sidewalk just outside of the establishment's patio, smoking a cigarette he had borrowed from Breanna Steele, a patron of the Corner Alley who was speaking to Yatsko after the fight on Euclid Avenue. Although both of these individuals explained that they were trying to find a ride home for Yatsko, Graziolli told him to leave the area immediately.  The two men then began arguing which escalated into another physical altercation with Yatsko and Graziolli exchanging multiple punches.
 At approximately 10:45 PM, Graziolli pulled his firearm from his holster and pointed it at Yatsko whereupon Yatsko stated, "Well, I guess you're going to have to kill me then".  The fight then continued until Graziolli discharged his weapon firing two shots into Yatsko.

Surveillance video indicates that Yatsko fell to the ground and remained there until patrons from inside the restaurant came out to render medical

2

assistance. Breanne Steele and Julius Murray, the manager on duty at the Corner Alley called 911 to report the shooting and request an ambulance. Thomas Yatsko later died from his wounds and was pronounced dead at 12:22 AM on January 14, 2018 at University Hospitals Cleveland Medical Center.

## Qualifications

My education and experience in the field of criminology qualifies me to render expert opinions concerning issues of foreseeability of crime and negligent hiring, supervision, and retention of employees.  I hold a Ph.D in sociology with a specific concentration on crime causation and criminal behavior.  I also have extensive research experience interviewing hundreds of incarcerated offenders regarding their assessment of risk for apprehension before the commission of a crime.

Additionally, I have over 30 years of experience teaching criminology at the university level which includes providing instruction in classes focusing on crime control and corrections, juvenile delinquency, criminal behavior systems, deviant behavior, global criminology, gang behavior and criminal justice.  I furthermore have the experience of designing an undergraduate major in Criminology at Capital University, creating a curriculum that modified a previous major in Criminal Justice into a program that emphasized criminal behavior and crime causation.

Lastly, as an independent consultant, I have been retained by both plaintiff and defense counsel in over 75 cases as an expert witness in the field of social science research in general, and criminal behavior in particular. Seventy-one of these cases involved the assessment of foreseeability in premises liability and negligent hiring, supervision, and retention matters.

## Documents Reviewed

- Plaintiffs' First Amended Complaint
- Plaintiffs' Answers & Objections to Defendant Corner Alley's First Set of Interrogatories

3

- Defendant Corner Alley/MRN's Responses to Plaintiffs' First Set of Interrogatories and Requests for Production of Documents
- Cleveland Division of Police CAD Call Log for subject incident
- Cleveland Division of Police Homicide File, redacted
- Cleveland Division of Police Internal Affairs File, redacted
- Cleveland Division of Police General Police Order – Secondary Employment, 1.1.25
- Cleveland Division of Police General Police Order – Use of Force
- Cuyahoga County Sheriff's Department Investigative File of CCSD Case #18-001UDF
- University Circle Police Department CAD Full Report and Response File
- Case Western Reserve University Police and Security Services CAD Full Report
- Cleveland Metroparks Ranger Department Ohio Uniform Incident Report 1-16-004816
- South Euclid Police Department Incident Report # 17-1008
- Deposition of Dean Graziolli
- Deposition of Anita Church
- Deposition of JoAnn O'Neill
- Deposition of Darian Allen
- Deposition of DeLeon McDuffie
- Deposition of Elizabeth Combs
- Deposition of Jamila Chambers
- Deposition of Jarod Perry-Richardson
- Deposition of Jonathan Seeholzer
- Deposition of Julius Murray
- Deposition of Jerrold Zarlenga
- Deposition of Michael McGrath
- Deposition of Ricardo Ibarra
- Deposition of Melissa Yatsko
- Corner Alley Uptown – Employee Handbook

- Corner Alley Uptown – Emergency Evacuation Plans
- Corner Alley Uptown – Employee Time Card
- Corner Alley Uptown – Bartender Training Manual
- Corner Alley Uptown – Host Stand Training Manual
- Corner Alley Uptown – Server Assistant Training Manual
- Corner Alley Upton – Server Training Manual
- Corner Alley Uptown – Bowling Host Training Manual
- Cuyahoga County Medical Examiner's File – Autopsy Report, M.E.'s Verdict
- Toxicology Report
- Yatsko Cell Phone Records
- Graziolli Interview with CPD Internal Affairs – 1of 3
- Graziolli Interview with CPD Internal Affairs – 2 of 3
- Graziolli Interview with CPD Internal Affairs – 3 of 3
- All surveillance videos from Corner Alley's 16 cameras for evening hours of January 13, 2018
- Crime Scene Photos – Folder 165079
- Expert Report from Glen Andrew Haas
- Expert Report from Jeffrey Noble
- Expert Report from Keith Marshall

**Evaluation:**

Based on my review of the materials listed *supra,* together with my familiarity and understanding of criminal behavior, I have formulated the following opinion in the above captioned matter.

   1. **It is my opinion that Corner Alley, LLC engaged in appropriate hiring practices when deciding to utilize off-duty Cleveland police officers to provide security at their facility.**

5

This opinion is based on my experience as a consultant in the field of criminology and security as well as accepted industry standards for the procurement of security at entertainment venues.  The gold standard for security at a privately-owned establishment is the use of off-duty police officers.  Not only does their presence and projection of authority, as communicated by their official uniforms, create an effective visual deterrent for potential offenders, these individuals also have extensive training in matters that are relevant to maintaining a safe environment that private security guards or bouncers do not necessarily possess. In addition, while police officers can be expected to have had experience dealing with uncooperative people and are proficient in de-escalation techniques, the same cannot be said of many bouncers or private security guards.  In short, if you are an owner of a private entertainment-related establishment that operates during the late evening hours, you simply cannot do better than landing a seasoned police officer to assist you in your efforts to provide a safe environment for your patrons.  That fact that an altercation took place between this officer and a patron who had been recently ejected does not negate the fact that the owners were practicing the best method available to them for ensuring the safety of their business invitees.

Testimony by Jonathan Seeholzer provides evidence that management carried out due diligence with respect to identifying and contracting with the most trained and effective security personnel.  When describing how they made the decision to use off-duty police officers to provide security, he noted that they had actually tried an alternative source – a private security company named Tenable -- and were dissatisfied with their performance compared to that of off-duty police officers.  With respect to the hiring of security for the Corner Alley Uptown location, Seeholzer testified that he asked the manager of Pickwick & Frolic, a nearby comedy club, for information on their off-duty police officers.  He stated:

> I had asked Nick at Pickwick & Frolic – because I had seen the same officers do a great job from time to time that I was on the (4th) street starting in 2009, I believe –who he used and how he went about it.[1]

---

[1] Deposition of Jonathan Seeholzer, p. 62, lines 11 - 15

Mr. Seeholzer also testified that he received the contact information for
Lieutenant Zarlenga of the Cleveland Division of Police from Nick and that he
knew Zarlenga had been providing off-duty security personnel for Pickwick &
Frolic ever since they opened in 2005.  Making a decision to utilize a police
lieutenant who has at least 13 years experience in providing officers to local
businesses for security is a responsible one.

He also conferred with the General Manager of the nearby House of Blues
regarding the use of security personnel.  Although he learned that the House
of Blues used a combination of in-house security (bouncers) and a private
security company, he nevertheless decided to use off-duty police officers
because he felt they would be better trained.  He testified:

> I was unsure about putting employees in that position
> even if they were trained.  I felt that Cleveland Police
> Officers were going to be much better trained because
> they were trained by the police academy, I would assume[2]

In addition, the deployment of security services was appropriate for any night-
time entertainment establishment.  That is, security in these facilities is
usually scheduled on Friday and Saturday nights and any other night when
you might expect a larger than average crowd.  Corner Alley Uptown utilized
their off-duty security detail in a manner that is in accordance with industry
standards.

2. **It is my opinion that Corner Alley Uptown LLC exercised no
direction or control over the actions of Dean Graziolli on January
13, 2018 and that Sergeant Graziolli was acting on his own as a
Cleveland police officer both in terms of his decision to leave the
facility to break up the fight outside as well as his decision to
engage with Thomas Yatsko.**

Most police departments have clear, written and published guidelines on
what police officers working secondary employment can and cannot do while
on the off-duty job. Commonly, one guideline is that the officer will **not** take

---

[2] Ibid, p. 73, line 1 - 5

orders from the management, but instead will follow their normal departmental policies and procedures regarding the handling of criminal behavior.  The Cleveland Division of Police says as much in their guidelines governing secondary employment which state:

> "The rules and regulations of the Division govern its members when engaged in secondary employment.  Violation of the provisions of this order may incur immediate termination of secondary employment permission and subject the member to disciplinary action" [3]

Clearly, any officer choosing to work in a secondary employment capacity is expected to behave as a Cleveland police officer and not permitted to behave as an employee of the entity that has subcontracted his or her services.  Indeed, if a Cleveland police officer operates under the direction of any entity other than the Cleveland Division of Police, s/he is flirting with not only the immediate loss of secondary job and income, but also a disciplinary action from the Division of Police.

In addition to these clearly stated mandates published by the Cleveland Division of Police, I also relied on the testimony of Sergeant Graziolli to arrive at my aforestated opinion.   Graziolli testified that outside of simply being a "presence", he had no specific knowledge of what his job duties were at the Corner Alley, nor did he know who he worked for, or how many bars were inside the establishment, or even where the first aid supplies were located.  Had he been an actual employee of the Corner Alley, he surely would have had some knowledge of these matters.

Furthermore, Julius Murray, the manager on duty at Corner Alley Uptown the night of the incident testified that no one on-site supervised the police officers who provided security in the establishment.  Similarly, Jonathan Seeholzer testified that the Cleveland police officers who worked at Corner Alley Uptown did not report to anyone at Corner Alley nor were they involved in any management meetings.  Seeholzer stated that they officers only reported to Liuetenant Zarlenga.

---

[3] Cleveland Division of police General Police Order – Secondary Employment, 1.1.25, p. 1

**3. It is my opinion that the shooting of Thomas Yatsko by Dean Graziolli at the Corner Alley on January 13, 2018 was an unforeseeable event.**

This opinion is based, among other things, on the lack of previous incidents of violence occurring at the Corner Alley Uptown.  In the field of criminology, we understand that the best predictor of future behavior is past behavior and this applies to locations as well.  Deposition testimony from Jonathan Seeholzer indicates that when Corner Alley LLC initially opened Corner Alley Uptown, they did not employ any type of security for 6 months because they did not feel a need for it.  In fact, the decision to start using security personnel was initially based solely on their effort to discourage underage drinking.  Every Thursday evening, the Corner Alley Uptown would host a College Night for local students.  It came to his attention that students were creating fake IDs that his ID scanner could not detect.  He, therefore, felt that having a police officer within view of the students would operate as a deterrent to those hoping to beat the system.   He testified that this was the reason they decided to bring in the off-duty police officers, not because of any violent incidents at the time.  He stated:

> That's why we brought them (security) in.  At that point I don't think we had any major incidents up there.[4]

The deposition testimony of Dean Grazziolli also informed my opinion regarding the general lack of violent crimes occurring at the Corner Alley Uptown.   When asked why he failed to bring any intermediate weapons to the Corner Alley on the night of the subject incident, Graziolli testified that he had worked it before and never had so much as a verbal altercation with anybody.  In fact, he further noted:

> Working there (Corner Alley Uptown) specific, there was no problems whatsoever."[5]

Dean Graziolli also testified that he started providing security at The Corner Alley Uptown in September 2017 and had worked similar secondary job assignments throughout his entire 27 year law enforcement career.  Clearly,

---

[4] Depositio of Jonathan Seeholzer, p. 65, lines 13 - 15
[5] Deposition of Dean Graziolli, p.44, lines 21 – 22

Mr. Graziolli is a veteran of this type of off-duty work and has developed an ability to assess the general threat level posed to any particular work location. He felt so comfortable and safe working at the Corner Alley Uptown that he actually testified that he was "lax" in not carrying intermediate weapons with him to this location.[6]

Plaintiffs argue in their First Amended Complaint that incidents similar to the shooting of Thomas Yasko by Dean Grazziolli were "substantially certain to occur, likely and foreseeable" without providing any evidence of this foreseeability. I submit that the subject incident or any similar incident occurring at this location was overwhelmingly unforeseeable, unexpected and unpredictable. The altercation between Graziolli and Yatsko was unexpected and not foreseeable by Corner Alley Uptown. Furthermore, the behavior of Yatsko was unexpected and difficult to comprehend or foresee. Deposition testimony from Graziolli and Breanne Steele indicate that Yatsko not only spit in the police officer's face, but also stated "Well, I guess you're going to have to kill me" when he saw Graziolli brandish his gun.

One explanation for the seemingly irrational behavior of Thomas Yatsko comes from the South Euclid Police Department. On December 31, 2017 – *a mere 14 days prior to the subject incident* – Thomas Yatsko was working his job at Dunkin' Donuts when he was confronted by two men with guns demanding that he give them the money from the store. Initially, Yatsko cooperated with the men and emptied a drawer of money from the till. When one of the men used a disrespectful tone to demand that Yatsko also empty the till near the drive-thru window, Yatsko refused and resisted. The police note that video surveillance of the incident shows the following:

> After this the camera shows Yatsko yelling at the suspect guarding the door. This is the moment when the suspect at the door tells him to open the drive-thru register and Yatsko told him he wouldn't do it. Yatsko appears agitated at this point. Yatsko then takes off his jacket and hat and throws them on the counter. It appears Yatsko was getting ready to defend himself. After a couple seconds, both suspects leave the building out the southside door.[7]

---

[6] Deposition of Dean Graziolli, p. 44, lines 12 - 15
[7] South Euclid Police Department Incident Report #17-1008

10

Sadly, this experience of Yatsko's more likely than not had an effect on his decision to "throw down" with Sergeant Graziolli on the night of the subject incident.  Being a young 21 year-old male who has already been in two physical altercations within the past hour, and has experienced a violent robbery just two weeks prior, Yatsko would likely have had elevated adrenaline levels and be highly suggestible.  The fact that his defensive stance led to a successful outcome two weeks earlier (the robbers ran away and did not shoot him) may have caused him to evaluate the subject incident's situation in a less dangerous manner.  That, more likely than not, played an influential role in Yatsko's decision to not back away from this fight.

In conclusion, it is my opinion that the deadly interaction between Dean Graziolli and Thomas Yatsko on the night of January 13, 2018 was a wholly unforeseeable event.

I reserve the right to supplement, amend, reconsider and/or qualify these opinions in the event that new information becomes available to me, or based on what is asked of me at deposition or trial.  Any new such information may or may not change the opinions rendered in this report.

Cordially yours,

Jane K. Gray, PhD
Jane Gray Associates, LLC

11

JANE GRAY ASSOCIATES

**Curriculum Vitae**

**Jane Gray, Ph.D.**

## EDUCATION

**Ohio State University - Ph.D.**                    1988
Major:      Sociology
Areas:      Criminology/Deviance
            Research Methodology
            Collective Behavior

**Ohio State University - M.P.A.**                   1980
Major:      Public Administration
Area:       Labor and Human Relations

**Ohio State University - B.S.**                     1978
Major:      Zoology

## ACADEMIC EXPERIENCE

**Ohio State University**                    Columbus, Ohio
Senior Lecturer                              2005 – 2015
Sociology Department                         Retired

**Capital University**                       Columbus, Ohio

Professor Emeritus                           2002  - present

Department of Behavioral Sciences

**Capital University**                       Columbus, OH
Chair                                        2000-2001



Department of Behavioral Sciences

**Capital University**                                  Columbus, OH
Associate Professor, Criminology                       1993 - 2001
Department of Behavioral Sciences

**Capital University**                                  Columbus, OH
Assistant Professor, Criminology                       1988 - 1992
Department of Behavioral Sciences

**Florida State University**                            Tallahassee, FL
Assistant Professor                                     1987 – 1988
School of Criminology

**Ohio University**                                     Athens, OH
Adjunct Professor, Prison Program                       1987 – 1991
Sociology Department
Ohio University Prison Program

**Ohio State University**                               Columbus, OH
Graduate Teaching Associate                             1984 – 1985
Sociology Department                                    1982 – 1983

**Ohio State University**                               Columbus, OH
Field Director                                          1983 - 1985

Disaster Research Center

**Ohio State University**                               Columbus, OH
Project Manager                                         1978 - 1981
Disaster Research Center

## **CONSULTING EXPERIENCE**

| | |
|---|---|
| Hanna Campbell & Powell, LLP<br>Premises Liability - Defense | Akron, OH<br>2019 |
| Heenan & Cook, PLLC<br>Negligent Hiring | Billings, MT<br>2019 |
| Collins Roche Utley & Garner, LLC<br>Negligent Hiring and Supervision - Defense | Cleveland, OH<br>2019 |
| William Butler, Esq.<br>Premises Liability - Plaintiff | Louisville, KY<br>2019 |
| Martzell, Bickford & Centola, APC<br>Premises Liability - Defense | New Orleans, LA<br>2019 |
| Weinberg Wheeler Hudgins Gunn & Dial<br>Premises Liability - Defense | Miami, FL<br>2019 |
| Barkan Meizlish, LLP<br>Premises Liability - Plaintiff | Columbus, OH<br>2019 |
| Davis Bethane Jones<br>Premises Liability - Plaintiff | Kansas City, MO<br>2019 |
| Orlando Martinez Law, PC<br>Premises Liability - Plaintiff | Albuquerque, NM<br>2019 |
| Dickie, McCamey & Chilicote, PC<br>Premises Liability - Defense | Cleveland, OH<br>2019 |
| HKM, PA<br>Premises Liability - Defense | Saint Paul, MN<br>2019 |
| Kenney & Henchen, PC<br>Premises Liability - Plaintiff | Colchester, VT<br>2019 |
| Bernstein & Poisson<br>Premises Liability - Plaintiff | Las Vegas, NV<br>2019 |
| Ferguson, Frost, Moore & Young, LLP | Montgomery, AL |

| | |
|---|---|
| Premises Liability - Defense | 2019 |
| Sinas, Dramis, Larkin, Graves & Waldman, P.C.<br>Premises Liability - Plaintiff | Chicago, IL<br>2019 |
| Sico, Hoelscher, Harris & Braugh, LLP<br>Premises Liability - Plaintiff | Houston, TX<br>2018 |
| Rushton, Stakely, Johnston & Garrett, PA<br>Premises Liability - Defense | Montgomery, AL<br>2018 |
| Martin Galvin, Esq.<br>Premises Liability – Defense | Bronx, NY<br>2018 |
| Dickie, McCamey & Chilcote, PC<br>Premises Liability – Defense | Cleveland, OH<br>2018 |
| Provost Umphrey, LLP<br>Premises Liability – Plaintiff | Houston, TX<br>2017 |
| MGM Resorts, International Operations, Inc et al.<br>Premises Liability - Mass Shooting, Mandalay Bay - Defense | Las Vegas, NV<br>2017 |
| Mullins & MacMillan, PA<br>Premises Liability – Defense | Kansas City, MO<br>2017 |
| Taylor Anderson, LLP<br>CO<br>Premises Liability/Mass Shooting,Planned Parenthood - Defense | Denver<br><br>2017 |
| Spiros Law, PC - Plaintiff<br>Negligent Hiring and Retention - Plaintiff | Champaign, IL<br>2017 |
| Taxman, Pollack, Murray & Bekkerman<br>Negligent Supevision - Plaintiff | Chicago, IL<br>2017 |
| O'Connell & Aronowitz, LLC<br>Premises Liability – Plaintiff | Albany, NY<br>2017 |
| Irwin, Carmickle, Fraley, LLP<br>Premises Liability – Plaintiff | Centennial, CO<br>2017 |

Fulmer, LeRoy & Albee, PLLC
Premises Liability/Mass Shooting, Pulse Nightclub – Defense

Orlando, FL
2016

Shutts & Bowen,
Premises Liability – Defense

Orlando, FL
2016

Triscaro & Associates, LTD
Premises Liability – Plaintiff

Solon, OH
2016

Jones Law Group, LLC - Plaintiff
Negligent Hiring and Retention - Plaintiff

Columbus, OH
2016

Wegman, Hessler & Vanderburg
Negligent Hiring and Retention – Plaintiff

Cleveland, OH
2016

Chasen Boscolo, LLC
Negligent Retention and Supervision - Plaintiff

Greenbelt, MD
2016

Zoll & Kranz, LLC
Premises Liability – Plaintiff

Toledo, OH
2015

Long & Marmero, LLP
Negligent Supervision – Plaintiff

Woodbury, NJ
2015

Freetag Carpenter, LLP
Premises Liability - Plaintiff

Columbus, OH
2015

Taylor Anderson, LLP
Premises Liability/Mass Shooting, Cinemark Theatre – Defense

Denver, CO
2015

Pierce Skrabanek Bruera, PLLC
Negligent Hiring and Retention - Plaintiff

Houston, TX
2015

Ogden Murphy Wallac, PLLC
Premises Liability – Defense

Seattle, WA
2015

Saldana, Carvajal & Velez-Rive, PSC
Negligent Hiring and Retention – Defense

San Juan, PR
2015

Cherundolo Law Firm, PLLC

Syracuse, NY

Premises Liability – Plaintiff                                      2014

Froble Law Firm, LLC                                               Beckley, WV
Negligent Supervision - Plaintiff                                  2014

Rue, Ziffra & Caldwell, PA                                         Port Orange, FL
Premises Liability – Plaintiff                                     2014

Davis & Young, LPA                                                 Cleveland, OH
Premises Liability – Defense                                       2014

Goodin Abernathy, LPA                                              Indianapolis, IN
Premises Liability – Plaintiff                                     2014

Plymale & Dingus, LLC                                              Columbus, OH
Negligent Hiring and Retention – Plaintiff                         2013

Zarwin, Baum, DeVito, Kaplan, Schaer & Toddy, PC                   Philadelphia, PA
Negligent Hiring and Retention – Plaintiff                         2013

Keis George, LLP                                                   Cleveland, OH
Negligent Hiring and Retention - Plaintiff                         2013

Offutt, Nord & Burchett, PLLC                                      Huntington, WV
Premises Liability – Defense                                       2013

David Todaro, LPA                                                  Wooster, OH
Premises Liability – Plaintiff                                     2013

Civerlo, Gralow, Hill & Curtis, PA                                 Albuquerque, NM
Negligent Hiring and Retention – Defense                           2013

Davis & Young, LPA                                                 Cleveland, OH
Premises Liability – Defense                                       2013

Naizby Law, LLC                                                    Stamford, CT
Premises Liability – Plaintiff                                     2012

Ferguson, Stein, Chambers & Sumter, PA                            Charlotte, N.C.
Premises Liability – Plaintiff                                     2012

| | |
|---|---|
| Constance A. Snyder, LPA<br>Negligent Hiring and Retention - Defense | Toledo, OH<br>2012 |
| Christopher Winters, Esq.<br>Premises Liability – Plaintiff | Cleveland, OH<br>2012 |
| Monohan & Blankenship, LLC<br>Premises Liability – Plaintiff | Florence, KY<br>2011 |
| Cozen & O'Connor, PC<br>Premises Liability – Plaintiff | Philadelphia. PA<br>2011 |
| Winters and Masters, LPA<br>Premises Liability - Plaintiff | Cleveland, OH<br>2011 |
| Bourgeois, Dresser, White & McGourthy, LLP<br>Premises Liability - Plaintiff | Worcester, MA<br>2010 |
| Kenneth Hicks, Esq.<br>Premises Liability -Plaintiff | Huntington, WV<br>2010 |
| Desmond Staples, PA<br>Premises Liability – Plaintiff | Tampa, FL<br>2010 |
| Hyatt & Weber, PA<br>Premises Liability – Plaintiff | Annapolis, MD<br>2009 |
| Kenneth Hicks, Esq.<br>Negligent Hiring and Retention – Plaintiff | Huntington, WV<br>2009 |
| Thielen, Foley & Mirdo, LLC<br>Premises Liability – Defense | Bloomington, IN<br>2009 |
| Jamie Oliver, Esq.<br>Premises Liability – Plaintiff | Columbus, OH<br>2009 |
| Winters and Masters, L.P.A.<br>Premises Liability – Plaintiff | Cleveland, OH<br>2007 |
| Moser and Marselek, LPA<br>Premises Liability – Defense | St. Louis, MO<br>2007 |

G. Ian Crawford, Esq.
Negligent Hiring and Retention - Plaintiff

Cleveland, OH
2004

Scott Schiff & Associates, LPA
Premises Liability – Plaintiff

Columbus, OH
2004

Malek & Malek, LLC
Premises Liability –Plaintiff

Columbus, OH
2003-2004

Sindell, Young, Guidubaldi & Sucher, PLL
Negligent Hiring and Retention - Plaintiff

Cleveland, OH
2001

Calhoun, Kademenos & Heichel Co., LPA
Premises Liability – Plaintiff

Mansfield, OH
1998

James McDonnell, Esq.
Premises Liability- Plaintiff

Cleveland, OH
1998

Pickrel, Schaeffer & Ebeling, LPA
Premises Liability – Plaintiff

Dayton, OH
1998

McLaughlin, McNally & Carlin, LLC
Premises Liability- Plaintiff

Youngstown, OH
1997 – 1998

Phillips & Mille Co., L.P.A.
Premises Liability – Plaintiff

Middleburg, Ohio
1997 – 1998

Pfarrer, Elliot & Squires
Premises Liability – Plaintiff

Dayton, OH
1997-1998

Sindell, Young & Guidubaldi
Premises Liability – Plaintiff

Cleveland, OH
1997

Benjamin Riek, Esq.
Premises Liability- Plaintiff

Cleveland, OH
1997

David Green, Esq.
Premises Liability – Plaintiff

Hamilton, OH
1992 – 1996

Clark, Perdue & Roberts                                    Columbus, OH
Premises Liability – Plaintiff                             1992

Plymale & Associates, LPA                                  Columbus, OH
Premises Liability – Plaintiff                             1991

Klein & Shafer, P.C.                                       Okemos, MI
Obscenity – Defense                                        1990-1991

Eric Rotondo, Esq.                                         Columbus, OH
Obscenity- Defense                                         1988

Dix & Eaton                                                Cleveland, OH
Figgie Crime Report                                        1988

Scientific Services, Inc.                                  Redwood, CA.
Evacuation Preparedness                                    1982

Ministry of the Attorney General                          Toronto, ON
Province of Ontario, Canada                                1981
Chemical Disaster Planning

Limerick Ecology Action                                    Pottstown, PA.
Nuclear Disaster Planning                                  1981

Three Mile Island Plaintiff's Counsel                      Philadelphia, PA.
Evacuation Preparedness - Plaintiff                        1981

Physicians for Social Responsibility                       New York, NY
Emergency medical response in nuclear incidents            1981

American Public Health Association                         Washington, D.C.
Emergency medical response                                 1980

ABC News Magazine 20/20                                    New York, NY
Evacuation behavior                                        1980

## PUBLICATIONS

"The ABCs of Premises Security Liability Cases," in the proceedings of the Negligence Law Seminar, Ohio Academy of Trial Lawyers, 1992.

"Research Findings on Community and Organizational Preparations for and Responses to Acute Chemical Emergencies," Public Management, Vol. 68, No. 3 (March, 1986): 11-13 (with E.L. Quarantelli).

"First Responders and Their Initial Behavior in Hazardous Chemical Transportation Accidents," in Recent Advances in Hazardous Materials Transportation Research: An Internal Exchange, ed. By Edythe Traylor Crump (Washington, D.C.: Transportation Research Board, National Research Council, 1986) (with E.L. Quarantelli).

"The Behavior of First Responders and Their Initial Definitions of Acute Chemical Emergencies," Disaster Management, Vol. 4, (1984): 6-12 (with E.L. Quarantelli).

"First Responders and Their Initial Behavior in Hazardous Transportation Accidents," Article #180, Disaster Research Center, University of Delaware, Newark, Delaware, 1984 (with E.L. Quarantelli).

"Socio-behavioral Aspects of Chemical Hazards: Summary Findings of Preparations for and Responses to Acute Chemical Emergencies at the Local Community Level," in Sociological Research Symposium XIII, ed. By Marie Larkin, Julie A. Honnold, and J. William (Richmond, Virginia: Department of Sociology, Virginia Commonwealth University, 1983) (with E.L. Quarantelli).

"Three Case Studies of Organized Responses to Chemical Disasters," Miscellaneous Report #29, Disaster Research Center, University of Delaware, Newark, Delaware, 1981.

"Characteristics Patterns of and Variations in Community Responses to Acute Chemical Emergencies," Journal of Hazardous Materials, Vol. 4 (1981): 357-365.

## SELECTED PROFESSIONAL PAPER PRESENTATIONS AND PROGRAM PARTICIPATION

"Controlling Sexual Solicitation and Importuning in Park Areas", presented at the Ohio Parks and Recreation Association Law Enforcement Section annual meeting in Columbus, Ohio, April 19, 2000.

"Risk Assessment and the Decision to Commit Violent Crime: The Criminal Perspective," presented at the American Society of Criminology annual meeting in Washington, D.C., November, 1998.

"The Use of Experts In Premises Liability Cases," presented at the Ohio Academy of Trial Lawyers annual meeting in Cincinnati, Ohio, May 22, 1998.

"Establishing Forseeability in Premises Liability Cases," presented at the Professional Education Systems, Inc. seminar entitled "Ohio Premises Liability: Inadequate of Negligent Security," held in Cleveland, Ohio (February 20, 1997) and Columbus, Ohio (February 21, 1997).

"Caught with Their Pants Down: Perpetrators of Victims of Public Order Crimes?," presented at the American Society of Criminology annual meeting in San Francisco, California, November 21, 1991.

"Trashed Twice – Part II," presented at the American Society of Criminology annual meeting in Baltimore, Maryland, November 6, 1990.

"Trashed Twice: Perceived Victimization in the Wake of Disaster," presented at the American Society of Criminology annual meeting in Reno, Nevada, November 10, 1989.

Participant, Roundtable discussion entitled "Bashing Women?," Academy of Criminal Justice Sciences annual meeting in Washington, D.C., March 29, 1989.

"On Studying Disasters Cross-Culturally" Some Considerations," presented at the ISA Research Committee on Disaster session, American Sociological Association annual meeting in Washington, D.C., August 27, 1985.

Participant, Japanese-United States Disaster Researchers' meeting in San Antonio, Texas, August 30, 1984.

"Looting in Disaster: A General Profile of Victimization," presented at the ISA Research Committee on Disaster session, American Sociological Association annual meeting in San Antonio, Texas, August 28, 1984 (with E. Wilson).

"Some Observations on Community and Organizational Preparations for and Responses to Acute Chemical Emergencies," presented at the Chemical Emergency Preparedness Program, The Centro Panamerico de Ecologia Human y Salud, Toluca, Mexico, June 26, 1984 (with E.L. Quarantelli).

"People's Reactions to Emergency Warnings," presented at the National Association of State Dam Safety Officials National Conference in Denver, Colorado, June 19, 1984.

"Interorganizational Conflict in Disasters: A Comparative Case Study Analysis," presented at the Southern Sociological Society annual meeting in Knoxville, Tennessee, April 13, 1984.

Discussant, Session on Disaster Research, American Sociological Association annual meeting in Toronto, Ontario, August 28, 1981.

"Research on Emergent Citizen Groups in Disasters," presented at the Natural Hazards Research Applications Workshop, University of Colorado, Boulder, Colorado, July 29, 1981.

"Socio-behavioral Patterns of Responses to Acute Chemical Emergencies," presented at the American Chemical Society national meeting in Houston, Texas, March 14, 1980.

## RECOGNITION/ HONORS

Recipient of the 1988 "Top Ten" Teaching Award in the Undergraduate Honors Program, Florida State University

Recipient of the 1987 Graduate Teaching Award, Ohio State University

## PROFESSIONAL ASSOCIATIONS

Member, American Society of Criminology

Member, American Sociological Association

Member, Board of Trustees, Alvis House Community Corrections Center, Columbus, Ohio 2004 - 2007

Member, American Society for Industrial Security (ASIA), 2019

# CASES IN WHICH JANE GRAY HAS PROVIDED TESTIMONY

*2015 through November 2019*

| Case | Deposition | Trial |
|------|:----------:|:-----:|
| **Kathy Wambles v. Vijoy Varghese, et al.**<br>*Circuit Court of Lee County, Alabama* (2019) | | |
| **Cory Cervantes v. The Bay Apartment Complex, et al.**<br>*District Court of Harris County, Texas* (2018) | X | |
| **Ali Adnan v. PRGI, LLC et al.**<br>*Circuit Court of Jackson County, Missouri at Kansas City (2017)* | X | |
| **Michael J. Benza et al. v. 21st Century Newspaper, LLC**<br>*Court of Common Pleas of Lake County, Ohio* (2017) | X | |
| **Warren Blasich v. The Cigarette Store, et al.**<br>*District Court, Boulder County, State of Colorado* | | X |
| **Lindsey Grasis et al. v. WIN Access, Inc. et al.**<br>*United States District Court for the District of Puerto Rico* (2016) | X | |
| **Elizabeth Ruiz v. Marriott International, Inc, et al.**<br>*Circuit Court for Prince George's County, Maryland* (2016) | X | |
| **Farah Soudani et al. v. Century Theaters, Inc et al.**<br>*United States District Court, Arapahoe County, Colorado* (2016) | X | X |
| **Anthony Pasquale v. Anita Saunders**<br>*Superior Court of New Jersey, Gloucester* (2016) | X | |
| **Philip Garret v. City of Huntington et al.**<br>*Circuit Court of Cabell County, West Virginia* (2015) | X | |



EXHIBIT

B

# Jane Gray, Ph.D

### Fee Structure and Agreement

**ENGAGEMENT**
The billing rate for consulting services and forensic examinations conducted by Jane Gray Associates, LLC (hereinafter JGA) is $500 per hour billed in 1/10 hour increments. These services include, but are not limited to the following: document review, research, crime data analysis, site visitation, interviewing, telephone conferences, trial/deposition preparation and report writing.

**TESTIMONY**
Testimony at deposition is billed in half-day increments at the rate of $4000 per day (8 hours). Trial Testimony is billed at $4000 per day or any portion of a day. Travel expenses associated with testimony will be paid by the client executing this agreement.

In order to schedule deposition or trial testimony or examination of the crime site, payment for all services rendered, including prepayment of fees for review and preparation time for scheduled testimony, and all necessary travel expenses must be received in the JGA offices no later than (10) business days prior to the date of the requested testimony or examination. Notification of cancellation of testimony must be received in writing at least (5) business days prior to scheduled testimony for a refund of the testimony fee paid to JGA. Testimony will be rescheduled unless all documents related to litigation, including but not limited to, all pleadings, all discovery materials, all depositions, and all other documents requested by JGA are not received in the JGA offices at least (15) business days prior to requested testimony.

**RETAINERS**
An initial non-refundable retainer of $5000 for each new case is to be paid before any work will be initiated. Identification of Jane Gray, Ph.D. as an expert witness is not authorized, nor will any work commence until the retainer fee and signed agreement is received. This flat fee, nonrefundable retainer is charged for Expert's skill and experience, her availability to Client to consult or begin work, and for Expert's possible need to decline other cases or work in order to be available to Client, and is therefore earned upon receipt. The first 10 hours of work will be charged against the retainer.

**INVOICES AND TERMS**
Invoices are due upon receipt. Balances not paid within 30 days of billing date will accrue interest at the rate of 18% per annum or the highest statutory rate allowed by the state where the retaining party is located.

Payment for all services rendered must be received in the offices of JGA before any verbal or written reports, opinions, affidavits or any work product of any nature is provided to client or prior to giving testimony for arbitration, mediation, deposition or trial. Failure to pay for services as agreed in this document will permit JGA, after notice to you, to terminate its services.



**SPECIFIC TERMS OF EMPLOYMENT**

This agreement constitutes the entire understanding between parties, and shall be construed under Ohio law as if written by both parties and all services provided in Franklin County, Ohio, where venue and jurisdiction shall lie for any controversy, claim or dispute arising out of or in connection with this matter.  Any such controversy, claim or dispute shall not exceed the amount of fees actually paid to Expert, and shall be resolved through binding arbitration in Franklin County, Ohio, in accordance with the then applicable rules of the American Arbitration Association.  Any resulting arbitration award will be enforceable in any state or federal court, and the prevailing party shall be entitled to recover attorney's fees and costs.

This agreement is between the party that executes this agreement ("Client") and JGA; therefore, the Client, not a third party, will be responsible for payment of all Billings submitted in connection with work performed on an engagement, including amounts for expert testimony, preparation for expert testimony, and reasonable expenses incurred in connection thereto.

The Client agrees to provide to JGA all documents related to the litigation, including but not limited to, all pleadings, all discovery materials, all depositions and other documents.  The Client agrees to immediately notify JGA of any Daubert challenge or any other motion filed relating to Jane Gray's expert testimony.

It is understood and agreed that the payment of any amounts pursuant to this Fee Structure and Agreement is for work performed and/or payment of expenses, as set forth above, and does not guarantee an opinion favorable to the client's position.  All opinions rendered by JGA are based solely upon expert's analysis and review of all relevant case materials as well as expert's knowledge and experience in the field.  Tendering of the retainer check by Client signifies acceptance of this Fee Structure and Agreement in its entirety.