**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **MELISSA YATSKO, et al.** | ) | **CASE NO.  1:18-CV-00814** |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| | ) | **JUDGE DAN AARON POLSTER** |
| **v.** | ) | |
| | ) | |
| | ) | |
| **SERGEANT DEAN GRAZIOLLI, et al.** | ) | **DEFENDANT SERGEANT DEAN** |
| | ) | **GRAZIOLLI'S MOTION FOR** |
| **Defendants.** | ) | **SUMMARY JUDGMENT** |
| | ) | |

Defendant Sergeant Dean Graziolli ("Graziolli") moves this Court, pursuant to Fed. Civ.

R. 56, for an Order granting Defendant Graziolli summary judgment against Plaintiff on all

counts stated in the Complaint/Amended Complaint. Defendant Graziolli is entitled to summary

judgment as a matter of law.  There is no genuine issue of material fact and, as a matter of law,

Defendant Graziolli is entitled to summary judgment on all claims.   In addition, Defendant

Graziolli is entitled to immunity and Defendant Graziolli did not violate Plaintiff's constitutional

rights.  Plaintiff is unable to rebut Graziolli's R. 56 evidence with competent summary judgment

evidence. A Memorandum in Support of this Motion, together with the attachments thereto, is

incorporated herein by reference.

Respectfully submitted,

/s/David M. Leneghan
David M. Leneghan, Esq. (0062025)
K. Scott Carter, Esq. (0080575)
4807 Rockside Road, Suite 240
Independence, Ohio 44131
(440) 223-4260  Fax (440) 838-4260
leneghanlaw@yahoo.com
Attorneys for Defendant Dean Graziolli

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................... iii

I.     Introduction ....................................................................................................1

II.    Background .....................................................................................................1

III.   Facts ...............................................................................................................2

IV.    Law and Argument .........................................................................................8

       A.  Standard of Review .................................................................................8

       B.  Summary Judgment on All Claims. ........................................................9

            1.   Defendant is Entitled to Summary Judgment on Plaintiff's First Claim for
                 Relief ...............................................................................................9

                 a)  Graziolli was Acting Under Color of Law...............................9
                 b)  No Violation of Yatsko's Fourth Amendment Rights.............11
                 c)  No Violation of Fourteenth Amendment ...............................13

            2.   Defendant is Entitled to Summary Judgment on Plaintiff's Second Claim for
                 Relief .............................................................................................15

            3.   Defendant is Entitled to Summary Judgment on Plaintiff's Fourth, Fifth,
                 Sixth, and Ninth Claims for Relief (State Law Claims) ...........................16

                 a)  State Statutory Immunity Bars the Four State Law Claims....................16
                 b)  Each of the Four State Claims Fail Even Independently of State
                     Immunity...................................................................................18
                     i)   Assault and Battery.............................................................18
                     ii)  Negligence..........................................................................18
                     iii) Intentional Reckless of Emotional Distress ........................19
                     iv)  Wrongful Death ...................................................................20

V.     Conclusion ....................................................................................................20

VI.    Certificate of Service .....................................................................................21

## TABLE OF AUTHORITIES

**Cases**

*Amway Distributors Benefits Ass 'n v. Northfield Ins. Co.*, 323 F.3d 386 (6th Cir. 2003) ........................................... 9

*Brower v. County of Inyo*, 489 U.S. 593 (1989) ........................................................................................... 11, 12

*Cameron v. City of Pontiac, Mich*. 813 F.2d 782 (6th Dist. 1987) ........................................................... 12, 13

*Cannavino v. Rock Ohio Caesars Cleveland*, 2017 Ohio 380, 83 N.E.3d 354 (8th Dist) ........................... 10

*Caudill v. City of Columbus*, 10th Dist. Franklin No. 17AP-129, 2017-Ohio-7617 ................................... 16

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ............................................................................................... 8

*Claybrook v. Birchwell*, 199 F.3d 350 (6th Cir. 2000) ........................................................................... 13, 14

*Cook v. Cincinnati*, 103 Ohio App.3d 80 (1st Dist. 1995) ...................................................................... 16, 17

*Daniels v. Williams*, 474 U.S. 327 (1986) ..................................................................................................... 13

*Darrah v. City of Oak Park*, 255 F.3d 301 (6th Cir. 2001) ........................................................................... 13

*DiLuzio v. Vill. of Yorkville, Ohio*, 796 F.3d 604 (6th Cir. 2015) ................................................................ 17

*Ewolski v. City of Brunswick*, 287 F.3d 492 (6th Cir. 2002) ........................................................................ 12

*Hick v. Scott*, No. 1:16cv621, 2019 WL 1439471 (S.D. Ohio, March 31, 2019) .......................................... 9

*Hicks v. Scott*, No. 1:16cv521, 2019 WL 1439471 (6th Cir.) ....................................................................... 15

*Hidden Vill., LLC v. City of Lakewood, Ohio*, 734 F.3d 519 (6th Cir. 2013) ............................................... 17

*Johari v. City of Columbus Police Dep't*, 186 F. Supp. 2d 821  (S.D. Ohio 2002) ...................................... 18

*Lanman v. Hinson*, 529 F.3d 673 (6th Cir. 2008) ......................................................................................... 11

*Lansing Dairy Inc. v. Espy*, 39 F.3d 1339 (6th Cir. 1994) ............................................................................. 8

*Mussivand v. David*, 45 Ohio St.3d 314, 544 N.E.2d 265 (1989) ................................................................ 19

*Neuens v. City of Columbus*, 303 F.3d 667 (6th Cir. 2002) ......................................................................... 10

*Niskanen v. Giant Eagle, Inc.*, 122 Ohio St. 3d 486, 2009-Ohio-3626, 912 N.E.2d 595 ........................... 18

*Norman v. City of Lorain* 2006 WL 3337466 (N.D. Ohio Nov. 16 2006) .................................................... 20

*Pointer v. City of Detroit*, No. 10-14057, 2011 WL 2580664 (E.D. Michigan) ......................................... 10

*Pyle v. Pyle* 463 N.E.2d 98 (Ohio 1983) ..................................................................................................... 20

*Rich v. City of Mayfield Heights*, 955 F.2d 1092 (6th Cir. 1992) ................................................................ 15

*Sanders v. Frank*, 11th Dist. Trumbull No. 2014-T-0074, 2015-Ohio-3644 .............................................. 19

*Scozzari v. McGraw*, 500 Fed.Appx. 421 (6th Cir. 2012) ...................................................................12

*Uebelacker v. Cmcom Systems Inc.* 549 N.E.2d 1210 (Ohio Ct. App. 1988) ...............................20

*United States v. Mendenhall*, 446 U.S. 544 (1980) ......................................................................11

*United States v. Smith*, 594 F.3d 530 (6th Cir. 2010) ...................................................................11

*Village of Brookville v. Louthan*, 3 Ohio Misc.2d 1, 441 N.E.2d 308 (C.P. 1982) .....................10

*Wilkerson v. City of Akron*, 906 F.3d 477 (6th Cir. 2018) .............................................................15

## Statutes

42 U.S.C. 1983 ............................................................................................................. 13, 23

O.R.C. § 737.11 ................................................................................................................ 14

O.R.C. 2744.03(A)(6)(a)-(b) ............................................................................................ 24

## Rules

Fed.R. Civ.P. 56(a) ........................................................................................................... 12

<u>**Memorandum in Support of Summary Judgment**</u>

**I. <u>Introduction.</u>**   This lawsuit arises out of the death of Thomas Yatsko ("Yatsko") on January 13, 2018, who was shot and killed by uniformed Cleveland Police Sergeant Dean Graziolli ("Graziolli"). (Doc #41.)  Graziolli incorporates each and every fact and legal argument of the City of Cleveland in its motion for summary judgment, not otherwise inconsistent herein.

On the night of the shooting, Graziolli was working secondary duty. (Ex. C, Graziolli 153:1) Graziolli was notified that two persons, later identified as Yatsko and Deleon McDuffie ("McDuffie"), were fighting outside. (Ex. C, Graziolli 183:12-17) Graziolli went outside to respond to the breach of peace. (Id. at 153:21-23)   He stopped the fight on Euclid Avenue by pulling apart and separating the combatants. (Id. at 185:15-17)  Shortly afterwards, as will be explained, Yatsko physically attacked Graziolli.  (Ex. A-1, Camera 4 at 22:45:33 – 22:46:02; Ex. C, Graziolli 216:9-24, 217:6-16) During Yatsko's attack on Graziolli, Yatsko repeatedly advanced and violently struck Graziolli in the face numerous times. (Ex. A-1, Camera 4 at 22:44:15; Id. at 211:17-20) Graziolli drew his service weapon but that did not deter Yatsko. (See, Ex A-1 Camera 4, at 22:44:15 - 22:46:02) Yatsko advanced again and struck Graziolli several more times after Graziolli drew his weapon, seriously injuring Graziolli. (Id.) Graziolli shot Yatsko twice as Yatsko was advancing on him yet again. (Ex A-1, Camera 4, 22:46:02: Ex. G, Steele 58:22-24) Graziolli still suffers from his injuries. (Ex. C, Graziolli  241:22 - 244:12)

**II. <u>Background.</u>**   What happened between Graziolli and Yatsko, (after Yatsko was ejected from the bar and later separated from the street fight between Yatsko and McDuffie), unfolded in less than two minutes, and the physical attack by Yatsko lasted just twenty-two seconds; the altercation is shown on camera footage. (Ex A-1, Camera 4, 22:44:15-22:46:02) The video shows Yatsko as the aggressor advancing and punching Graziolli on the snow-covered ground; Graziolli back stepping after each advance and punch strike by Yatsko to put distance

1

away from Yatsko; Graziolli putting his hand "up" in self- defense and to thwart off punches;

Yatsko striking Graziolli in the face multiple times, even after Graziolli drew his gun; blood on

Graziolli's mouth and puddles of blood from Graziolli spitting blood from his mouth after the

attack. (Id.)  The video leaves no room to doubt the hostility of Yatsko. (Id.) Graziolli had no

choice but to shoot to survive the attack and "save [his] life". (Ex. C, Graziolli  219-220).

Numerous pictures show Graziolli's injuries. (Ex G, Graziolli Photos at Hospital from

Police Investigation file.)  Graziolli received stitches to the wounds inside of his mouth. (Ex. C,

Graziolli  237:10-15) Graziolli sustained a concussion. (Id. at 237:10-15)

**III. <u>Facts.</u>**   On January 13, 2018, Yatsko and McDuffie went to The Corner Alley

Uptown. (hereinafter "CAU") (Doc #41; Ex. C, Graziolli  162:1-4, 183:12-17) McDuffie knew

Yatsko from when McDuffie went to Dunkin Donuts to purchase Oreo sundaes. (Id. at 14:3-23,

18:6-11) They did not hang out or meet socially beforehand. (Id. at 14:3-14)

After they arrived at CAU, Yatsko purchased an alcoholic drink for himself and

McDuffie. (Ex. D, McDuffie 29:4-20)  While they were waiting to bowl, they played games. (Id.

at 28:23-25) Thereafter, Yatsko wanted to get a second drink, but McDuffie wanted a non-

alcoholic drink. (Id. at 29-30) McDuffie then saw another side of Yatsko he had never seen

before.  (Ex. D, McDuffie  30:22-25 – 31:1-6) They were having a conversation about a picture

Yatsko showed McDuffie on his cell phone that Yatsko identifies as was his son.  (Id. at 30-32;

32:6; 30:14-6) (Yatsko does not have a biological son.  At times, Yatsko cared for his former

girlfriend's son.) McDuffie said "it was a nice picture," "joking", "can I adopt him", "stuff like

that."  (Id. at 31:9-13)   Yatsko took it the wrong way. (Id. at 30: 21-25) Yatsko started hitting

McDuffie.  (Id. at 31: 19-25) Camera footage captured this fight inside CAU. (Ex A-2  Camera 8

at 22:16: -22:17:00)

Yatsko kept advancing towards McDuffie striking, swinging at and punching McDuffie multiple times as McDuffie tried to walk away.  (Id.)  Yatsko punched McDuffie more than ten times in a matter of a few seconds.  (Id.)  McDuffie turned his back to cushion and block the flow of rapid punches.  (Id.)  McDuffie did not swing at or punch Yatsko. (Id.; Ex. D, McDuffie , 34:22-24) McDuffie 35:18-22) The two separated and McDuffie threw a glass with ice in it at Yatsko. (Ex. A-2 Camera 8 at 22:17:01; Ex. D, McDuffie at 35:23-25)

CAU staff members rushed to separate them. (Ex A-2, Camera 8 at 22:17:03 et seq.) A CAU staff member rushed to "get the cop" to assist in escorting the two out of the establishment. (Id.; Deposition of Jamila Chambers 21:25)   At that time, Graziolli, was off regular duty, working approved secondary employment at CAU. (Ex. C, Graziolli 153:1) Graziolli has worked at CAU previously, as do other off duty Cleveland Police officers. (Id. at 136-138)

Graziolli obtained CAU work from his Lieutenant. (Ex. C. Graziolli  135:7-9) The City of Cleveland Police Department approved his work before starting.  (Ex. C. Graziolli  40:1-24) Graziolli needed City permission before he could undertake the work.  (Ex. C. Graziolli  41 - 42) Graziolli had to wear his police uniform and carry in gun as a condition of being able to take on the work.  (Ex. C. Graziolli 43) While working secondary employment Graziolli is required to fulfill official responsibilities as a police officer as circumstances arise.  (Ex. C. Graziolli 45) That obligation includes preserving the peace and addressing criminal activity as may arise.  (Ex. C. Graziolli 45:16-25) If a crime is observed, Graziolli is obligated to address it whether working on-duty or working secondary employment. (Ex. C. Graziolli 46)

McDuffie and Yatsko were ejected from CAU with McDuffie first escorted outside by CAU staff members followed by Graziolli. (Ex. A-2, Camera 8 22:17:03 et seq.; See also, Ex. A-4 at 22:17:19)  Yatsko went upstairs as the staff walked McDuffie outside. (Ex. A-3, Camera 8 at 22:17:23)   He walked to where his jacket was located but then walked around. (Id. at 22:17:34

3

– 22:17:36) Four staff members hurriedly went upstairs. (Id. at 22:17:29) Graziolli also went upstairs a bit behind them. (Id. at 22:17:52-58) Yatsko went back to his jacket, retrieved his jacket and was escorted downstairs and outside. (Id. at 22:18:24)    Staff members followed Yatsko downstairs to the outside with Graziolli behind them. (Id. at 22:18:33; Ex. A-4  Camera 4 at 22:19:08; Ex. A-4,  Camera 4 at 22:19:08)

When Yatsko walked outside, McDuffie was still within CAU patio area.  (Ex. C, Graziolli , 179-80, Ex. A-4,  Camera 4 at 22:19:08) Yatsko and McDuffie again exchanged words and Graziolli told both of them they had to leave the premises. (Ex. C, Graziolli , 180-181; Ex. A-4,  Camera 4 at 22:19:08 to 22:20:20)

After Yatsko left the outside patio area of CAU, he confronted McDuffie another time on the sidewalk. (Ex. D, McDuffie  47-49) Yatsko attacked McDuffie on the sidewalk and threw punches at McDuffie. (Ex. D, McDuffie , 47:12-13) McDuffie started to back away but Yatsko kept proceeding towards him striking him, like beforehand. (Id. at 47-53)

 After attacking McDuffie on the sidewalk, Yatsko again attacked McDuffie. (Ex. D, McDuffie 53:3-20) This time the attack was in the street on Euclid Avenue. (Id. at 51:7-8) Yatsko picked up a stick and struck McDuffie on the road. (Ex. D, McDuffie 53:3-20)

A bar patron, Patrice Forney, who observed the fight earlier, noticed Yatsko outside on top of McDuffie hitting him in the roadway. (Ex. J, Partial Transcript Record by County Sheriff from Sheriff Deputy Interview and recording) She observed this from the first floor near the windows.  (Id.) Forney informed Graziolli that the two were fighting again outside. (Id.; Ex. C, Graziolli  183:12-17)  Graziolli said he did not know why they were fighting, they are friends. (Ex. J) Graziolli proceeded outside, through the patio enclosed-in area, out to the street to the fight in the roadway. (Ex. C, Graziolli , 183:21-23; Ex. A-1 Camera 4 at 22:38:52)

4

When Graziolli arrived at the attack in the roadway, Graziolli saw Yatsko on top of McDuffie and Yatsko punching and kicking McDuffie in the head and face. (Ex. C, Graziolli 184:15-18) Graziolli pulled Yatsko off McDuffie. (Id. at 185:15-17) As Yatsko was being pulled off, he drew back to swing at Graziolli, who said, "take a look at who you are going to punch". (Id. at 186:5-6) Yatsko walked away and Graziolli continued help McDuffie. (Id. at 189:4-18)

Graziolli got McDuffie out of the street and had him go wait in an area opposite to the direction that Graziolli saw Yatsko walk towards. (Ex. C, Graziolli 188:21-23) Due to the night time nature of darkness and cold, Graziolli started to walk back towards CAU to a better lit area to call 911 to get medical aid for McDuffie. (Id. at 191:10-14, 193:9-25) Upon getting closer to CAU, Graziolli came upon Yatsko, who was meandering outside the patio. (Id. at 192:14-25)

Yatsko had gone back towards the direction of CAU after being separated from fighting McDuffie on Euclid Avenue. (Ex. C, Graziolli 188:23-25) Yatsko went inside the patio area and began conversing with a female, Breann Steele, ("Steele") who was smoking outside. (Ex. H, Steele 47:17-25) Earlier that night Steele had a flirtatious/romantic interest in Yatsko when she and her cousin saw him earlier in the evening. (Id. at 49:10-12) Yatsko proceeded once again outside the enclosed patio area where he continued to wait, when Graziolli came up upon him returning from the roadway to call 911 for McDuffie. (Ex. C, Graziolli 192:3-25, 193:9-11)

Graziolli told Yatsko it was time for him to go, he had to move on out of the area. (Ex. G, Steele 48:11-13) Yatsko spit on Graziolli and Yatsko said to Graziolli that Graziolli was going to have to kill him. (Ex. C, Graziolli 215-216; Ex. F, Steele 56:2-13) Yatsko steps toward Graziolli while outside the patio area. (Ex. C, Graziolli 216:6-15; Ex. A-1, Camera 4 at 22:45:38) Graziolli handed Yatsko his jacket. (Id. at 206:21-25) Yatsko immediately dropped the jacket and advanced towards Graziolli. (Ex. A-1, Camera at 22:45:38)

5

Graziolli stepped backward into the enclosed patio area and Yatsko continued to pursue Graziolli. (Ex. A-1, Camera 4 at 22:45:37 - 22:45:55) Yatsko steps into Graziolli five times within 18 seconds, each time backing away to advance again. (Id.)  Yatsko repeatedly struck Graziolli's face. (Ex. C, Graziolli  211:17-21; Id.) In the video Graziolli is holding his left hand up in the air to deflect the punches and repeated attacks from Yatsko. (Ex. A-1, Camera 4 at 22:44:15 - 22:46:02) Graziolli unholstered his side firearm and held it low in his right hand after a couple of punches by Yatsko. (Id.)  All of the punches from Yatsko were made stepping into Graziolli, and some of them while Graziolli had his gun drawn, held low in his right hand. (Id.)

Graziolli immediately started spitting up blood from his facial injuries sustained. (Ex A-1, 4, 22:46:17-22:51:00) The ground was visibly full of Graziolli's blood having been spit up from the punches to his face. (Ex. A-1, Camera 4, 22:46:17 - 22:51:00) Graziolli had to use a white napkin to stop the blood from coming out of his mouth. (Ex. A-1, 4, 22:46:17-22:51:00) Graziolli was treated for his medical injuries at University Hospital that night.  Graziolli's medical injuries included cuts to the inside of his mouth and a concussion.  (Ex. C, Graziolli 237:10-15) Photos attached hereto illustrate the injuries Graziolli sustained. (Ex. G)

One bar patron, Ian Fitzpatrick, observed the interaction between through the window a few feet away. (Ex. H, Fitzpatrick at p. 2) He saw what looked like a normal conversation when, "all of a sudden," Yatsko threw the first punch at Graziolli. (Ex. H)  Fitzpatrick said "Oh, is anybody else watching this?" (Id. at p. 4) Fitzpatrick saw each punch strike Graziolli in the face saying Graziolli looked surprised taking the first couple punches to his face, until he tried to defend himself. (Id. at p. 5-6) Fitzpatrick described the altercation as if Graziolli "was getting his ass kicked. It was bad. It was bad."  (Id. at p. 6) Fitzpatrick said Graziolli drew his gun, took two more punches and then fired to defend himself. (Id. at 6-7)

Another bar patron, Heather Diamond ("Diamond) was having a Christmas party at CAU that night. (Ex. I, Diamond at p. 1, ¶ 2) Yatsko and McDuffie tried to get food from her party and she told them they could not.  (Id. p. 1, ¶ 3) She observed a guest of her party, Steele, outside smoking. (Id. p. 1, ¶ 3)   Diamond saw the altercation. (Id. p. 1, ¶ 5) Diamond stated that she saw Yatsko pushing Graziolli and could tell that Graziolli was telling Yatsko to get back. (Id. p. 1, ¶ 5) She then told her husband that "hey, that kid they just kicked out of here is arguing with the cop." (Id. p. 1, ¶ 5) Diamond saw Yatsko push and then punch Graziolli. (Id. p. 1, ¶ 5) Diamond stated that the blow from Yatsko drove Graziolli back and Yatsko entered the patio. (Id. p. 1, ¶ 5) Diamond states that Graziolli put his hand up to his face and then down by his side and Yatsko punched Graziolli again. (Id. p. 1, ¶ 5) Diamond told her husband "someone should help him [Graziolli]". (Id. p. 1, ¶ 5)  Diamond went downstairs and saw her worker applying pressure to Yatsko's wounds. (Ex. I, p. 1, ¶ 6) Diamond directed her attention to Graziolli who was bleeding from the mouth and nose and appeared to be dazed and in shock, and told Graziolli he needed to put something on his mouth.  (Id. at p. 1, ¶ 7)

Graziolli called out for someone to call 911 a few seconds after the shots.  (Id. at 225:21-23; Ex. A-1, Camera 4 at 22:46:17; Ex. B-3; Ex. G, Steele 64:23-265:1-2)  Steele called 911 and stated to 911 that "[the officer] **had to shoot**" Yatsko. (Ex. G, Steel  103:10-13 [Emphasis added]; B-3) Later, Steele was placed in a police car and said Yatsko "was really aggressive to the officer" and was saying "just kill me" to Graziolli. (Ex B-2; Ex. C, Steele  *passim*) And, Steele conceded "the kid [Yatsko] was in the wrong." (Ex B-1)  Since CAU is near University Hospital and Case Western Reserve Medical School, some bar patrons, who were medical professionals, provided immediate aid to Yatsko.  (Id.)  So, too, did CAU staff members.  (Id.)

A female bartender, Jamila Chambers, looked up to see the shooting because before the shooting, someone in the bar shouted out "this guy is crazy, he is trying to fight a police officer."

7

Graziolli continues to suffer from his injures and his concussion. (Ex. C, Graziolli 235:13-23, 237:10-244:5) Graziolli's medical problems include sporadic loss of short-term memory, neck pain from a sprained neck, migraines and a malformation inside of his mouth. (Ex. C, Graziolli 241-244) Graziolli is still being treated and still suffering from his concussion. (Ex. C, Graziolli 241:22-244:12) Graziolli has been unable to return to normal active duty due to his lasting medical problems. (Ex. C, Graziolli 235:13-23)

In 2019, a Cuyahoga County grand jury declined to indict Graziolli for any crime.

To this day, Yatsko's mother does not understand why her son stepped into and punched a uniformed city police officer who had his gun drawn. (Ex. E, Melissa Yatsko 129 - 131)

### IV. <u>Law & Argument</u>

**A. Standard of Review.** Summary judgment standard is well known and does not require a lengthy dissertation. Summary Judgment shall be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." See Fed.R. Civ.P. 56(a). The burden is on the moving party to show no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lansing Dairy Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994). The moving party must either point to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials" or show "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." See Fed.R.Civ.P. 56(c)(1)(A), (B).

Whether summary judgment is appropriate depends upon "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one

party must prevail as a matter of law." *Amway Distributors Benefits Ass 'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003) (quoting *Anderson,* 477 U.S. at 251-52).

### B. Summary Judgment should be granted in favor of Defendant on all claims

#### 1) *Defendant is entitled to Summary Judgment on Plaintiff's First Claim for Relief*

Summary judgement should be granted on Plaintiff's First Claim for Relief against Graziolli, Excessive Force in Violation of Fourth and Fourteenth Amendments under 42 U.S.C. 1983, as Graziolli did not violate Yatsko's constitutional rights. To the extent it could be found that Graziolli violated Yatsko's Constitutional rights, Graziolli is entitled to qualified immunity.

To be successful on his excessive force claim, Yatsko must establish Graziolli: 1) acted under color of law; and 2) he deprived Yatsko of some constitutional right under either the Fourth or Fourteenth Amendment. *Hick v. Scott*, No. 1:16cv621, 2019 WL 1439471 (S.D. Ohio, March 31, 2019).

If it is determined that Graziolli was acting under color of law, the Court must then determine which Amendment applies.  If it is determined that Yatsko was "seized", then the Fourth Amendment would apply and its Objective Reasonableness Test would be used to determine if Graziolli's actions were reasonable.  If Yatsko was not "seized", then the Court would need to determine if Yatsko's Fourteenth Amendment rights were violated and, if so, the Shock the Conscience Test would be used to determine if Graziolli acted reasonably.

Here, the indisputable facts show Yatsko was never "seized" and therefore Yatsko has no claim under the Fourth Amendment, and to the extent Graziolli may have violated Yatsko's Fourteenth Amendment rights, Graziolli is entitled to qualified immunity as his actions were reasonable.  Accordingly this Court should therefore grant summary judgement on this claim.

#### a) *Graziolli was Acting under Color of Law*

In determining if an officer is acting under color of law it is not whether "a police officer is on or off duty, or in or out of uniform [that] is controlling . . . it is the nature of the act performed which determines whether the officer has acted under color of law." *Neuens v. City of Columbus*, 303 F.3d 667, 670 (6th Cir. 2002); *Pointer v. City of Detroit*, No. 10-14057, 2011 WL 2580664 * 2 (E.D. Michigan).  The determination of whether an officer was acting under color of law is "a legal conclusion to be reached by the court" and cannot be stipulated to. *Neuens* at 670.  Factors courts look to in making this determination are whether the officer manifested his authority by wearing his uniform, identifying himself as a police officer, showing his badge, carrying his weapon, and/or carrying out a duty or obligation imposed by law. *Pointer* at * 3.

O.R.C. § 737.11 finds that whether a police officer is on duty, off-duty or on special duty, the officer has an "obligation to follow his or her oath to preserve peace, protect persons and property and obey and enforce all ordinances of the city." *Village of Brookville v. Louthan*, 3 Ohio Misc.2d 1 *1, 441 N.E.2d 308, 309 (C.P. 1982).  Moreover, under Ohio law, an officer working a secondary security job "is still performing a governmental function." *Cannavino v. Rock Ohio Caesars Cleveland*, 2017 Ohio 380, 83 N.E.3d 354 ¶ 24 (8th Dist).

Here, Graziolli was working secondary employment procured and approved by the City. He was wearing his uniform, displaying his police badge, carrying his City issued pistol, identified himself as a police officer.  In fact, Graziolli said to Yatsko when Yatsko first went to strike Graziolli while on Euclid Avenue - "Look at who you are going to hit."  More importantly, Graziolli was acting pursuant to his statutory duty to preserve the peace and protect persons and property.  After all, he was responding to a fight between two combatants on Euclid Avenue. Accordingly, he was acting under color of law.  Since Graziolli was acting under color of law, it must now be determined if he violated Yatsko's Fourth or Fourteenth Amendment right to be free from use of excessive force.

### b) *No violation of Yatsko's Fourth Amendment Rights*

The Fourth Amendment protects against unlawful search and seizures and the use of excessive force during the initial act of restraining an individual's liberty. *Lanman v. Hinson*, 529 F.3d 673, 680 (6th Cir. 2008).

This right is implicated when a free person is **seized** during arrests or investigatory stops. *Id*. The *Lanman* Court found the Fourth Amendment "applies any time a government official **seizes** a free citizen with the purpose of potentially creating an involuntary custodial relationship with the State." *Id* (emphasis added). Therefore, the applicability of the Fourth Amendment turns on whether Graziolli "seized" Yatsko.

The United States Supreme Court finds that a "**seizure**" occurs when "in view of all circumstances surrounding the incident, ***a reasonable person would have believed that he was not free to leave***." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980); *Brower v. County of Inyo*, 489 U.S. 593, 600 (1989). The freedom of movement must be the result of "means intentionally applied" to stop that movement. *Brower* at 597-599. An example of this is setting up a road block for the purpose of stopping a fleeing felon or shooting a fleeing felon. *Brower* 595, 599. In both those instances, the means, roadblock and gun, were intentionally applied to stop a fleeing felon.

Under Sixth Circuit jurisprudence, for there to be a "**seizure**", "the encounter must not be consensual and the officer must use physical force or the individual must submit to the officers' show of authority." *United States v. Smith*, 594 F.3d 530, 535-536 (6th Cir. 2010) (internal citations and quotes omitted). A consensual encounter can become "a ***seizure*** when in view of all the circumstances surrounding the incident, ***a reasonable person would have believed that he was not free to leave***." *Smith* at 535-536 (emphasis added).

11

"There is *__no seizure__* without actual submission."  *Scozzari v. McGraw*, 500 Fed.Appx. 421, 424 (6th Cir. 2012) (emphasis added). A *__seizure__* in violation of the Fourth Amendment requires the 'intentional acquisition of physical control' of a person by a state official." *Ewolski v. City of Brunswick*, 287 F.3d 492, 506 (6th Cir. 2002) (citing *Brower* at 596) (emphasis added).

Therefore, "[a] *__seizure__* does not occur until the subject is successfully *__detained__* by physical force or a show of authority." *Id*. (citing *California v. Hodari D.*, 499 U.S. 621).  "***The distinguishing feature of a __seizure__ is the restraint of the subject's liberty – specifically, his or her freedom to walk away***." *Id*. At 507 (emphasis added).  "The use of deadly force standing alone **does not** constitute a seizure, and absent an actual physical restraint or physical seizure, the alleged unreasonableness of the officers' conduct cannot serve as a basis for a § 1983 cause of action anchored in the Fourth Amendment." *Cameron v. City of Pontiac, Mich*. 813 F.2d 782, 785 (6th Dist. 1987) (emphasis added).  Therefore, it follows that the reasonableness of an officer's use of his weapon cannot be challenged where there is no seizure.  *Id.*

In *Ewolski* it was found that a defendant who barricaded himself in his house had been seized because the police had surrounded the house and parked an armored car in front of the house thereby trapping the individual in his house and taking away his freedom to leave.  *Id*. At 506.

Pursuant to the forgoing cases, a seizure occurs: 1) where there is a nonconsensual encounter between an individual and an officer; and 2) the officer, by use of some force or authority, takes away an individual's freedom to leave a location for the purpose of, and with the intent to, restrain or detain the individual and the individual is actually detained or restrained. These facts are not present here.

There are no facts showing Graziolli was attempting to arrest, restrain or even search Yatsko.  At no point did Graziolli instruct Yatsko to stay.  To the contrary, Graziolli instructed

12

Yatsko on numerous occasions to leave the area.  This is confirmed by Graziolli.  It is also confirmed by Steele who witnessed Graziolli tell Yatsko to leave.  Furthermore, the Amended complaint likewise confirms that Graziolli "told him [Yatsko] to leave the area" (Doc #41 ¶22).  Indeed, the Amended Complaint never states that Graziolli was attempting to arrest, restrain, search or in other way, seize Yatsko.  (Doc #41)

Moreover, Graziolli did not impede Yatsko's ability to leave CAU.  No, all the evidence indicates Graziolli told Yatsko numerous times that he needed to leave CAU area, but Yatsko quite clearly chose not to leave. Yatsko chose to stay and physically engage Graziolli, even though Yatsko knew Graziolli was a police officer.  Therefore, Yatsko was not "seized" and, pursuant to the Sixth Circuit in *Cameron,* Graziolli's conduct cannot serve as the basis of Yatsko's Fourth Amendment claim and cannot be challenged thereunder and to the extent Graziolli's actions could be, there is no doubt they would be found objectively reasonable.

### *c) No violation of Yatsko's Fourteenth Amendment Rights*

If Graziolli did not "seize" Yatsko for purposes of the Fourth Amendment, Yatsko's excessive force claim is analyzed under the substantive component of the Fourteenth Amendment's due process clause. *Darrah v. City of Oak Park*, 255 F.3d 301, 306 (6th Cir. 2001).

"The substantive component of the due process clause insulates citizens against the arbitrary exercise of governmental power."  *Claybrook v. Birchwell*, 199 F.3d 350, 359 (6th Cir. 2000).  The clause "is not implicated by a state official's ***negligent*** act causing unintended loss or injury to life, liberty, or property."  *Daniels v. Williams*, 474 U.S. 327, 327 (1986) (emphasis added).  An officer will only be found to have violated a person's substantive due process rights if his course of action "shocks the conscience" *Claybrook* at 359.  The standard as to what "shocks the conscience" depends on the amount of time the officer has to act before using force.

13

The Sixth Circuits finds:

In situations wherein the implicated state, county, or municipal agent(s) are afforded a reasonable opportunity to deliberate various alternatives prior to electing a course of action . . . their actions will be deemed conscience-shocking if they were taken with "deliberate indifference" towards the plaintiff's federally protected rights.

In contradistinction, in a rapidly evolving, fluid, and dangerous predicament which precludes the luxury of calm and reflective pre-response deliberation . . ., public servants' reflexive actions "shock the conscience" only if they involved force employed "maliciously and sadistically for the very purpose of causing harm" rather than "in a good faith effort to maintain or restore discipline.

*Claybrook* at 359 (internal quotes omitted).

Here, as set forth above, roughly 105 seconds elapsed from the time Graziolli got back to CAU's patio area (after breaking up the fourth physical altercation between Yatsko and McDuffie) and the time Yatsko was shot. During the first 78 seconds, Graziolli instructed Yatsko to leave and handed Yatsko's jacket to Yatsko which was hanging on the patio wall, Yatsko told Graziolli he was going to have to kill him, and Yatsko spit on Graziolli. For the next five seconds Graziolli conceded ground to Yatsko to create space and back stepped into the patio walled area when Yatsko followed and advanced upon Graziolli and struck Graziolli. For 22 seconds, Yatsko continued his actions, each time advancing, striking, and stepping back. Yatsko continued these actions even after Graziolli had his weapon drawn, despite being instructed to stop. Finally, when Graziolli was hit multiple times to the face and with Yatsko showing no signs of stopping, and once again advancing to strike, Graziolli discharged his weapon and killed Yatsko. Given the rapid nature of the events, Graziolli did not have the luxury of calm pre-response deliberation and therefore, Graziolli's use of deadly force will only be found to "shock the conscience" if he acted "maliciously and sadistically for the very purpose of causing harm" rather than "in a good faith effort to maintain or restore discipline." Based on the undisputed facts here, there is no doubt that Graziolli acted in a manner that does not shock the conscience.

14

### 2)  Defendant is entitled to Summary Judgment on Plaintiff's Second Claim for Relief

Summary judgement should be granted on Plaintiff's Second Claim for Relief against Graziolli: Count 2 – deliberate indifference to serious medical needs in violation of the Fourteenth Amendment 42 U.S.C. 1983 because medical treatment was immediately summoned.

The Due Process Clause of the Fourteenth Amendment requires officers to provide adequate medical care to individuals injured by them. *Hicks v. Scott*, No. 1:16cv521, 2019 WL 1439471 *10 (6th Cir.).  This requirement is satisfied "by summoning medical care and not intentionally or recklessly delaying his access to it."  *Wilkerson v. City of Akron*, 906 F.3d 477, 483 (6th Cir. 2018) (the officers found in compliance with their Fourteenth Amendment obligation by immediately calling for medical treatment).

The Court in *Rich v. City of Mayfield Heights*, 955 F.2d 1092 (6th Cir. 1992) found that the officers sued therein met their constitutional burden by promptly summoning medical care. At 1097.  In coming to its conclusion, the *Rich* Court analyzed several cases on this topic.  In *City of Revere v. Massachusetts Gen. Hosp.,* 463 U.S. 239 (1983), the burden to provide adequate care was met when the injured was taken promptly to the hospital that provided treatment for his injuries.  *Id*.  The *Rich* court also highlighted that in *Maddox v. City of Los Angeles*, 79 F.2d 1408 (9th Cir. 1986) the due process clause does not place an affirmative duty on the part of police officers to render CPR in any and all circumstances. . . . Due process requires that police officers seek the necessary medical attention . . . by . . . promptly summoning the necessary medical help." *Id*.  In *Tagstrom v. Enockson*, 857 F.2d 502 (8th Cir 1988), it was found the officers constitutional obligation was met by calling an ambulance.  The *Tagstrom* Court found that the officer was "in no way deliberately indifferent to [the injured' s] medical needs. It is undisputed that [the officer] called for the ambulance immediately upon seeing the accident and that the ambulance arrived within six minutes or less." *Id.* 1097-98.

15

Here, as outlined above, Graziolli immediately requested 911 be called.  Also, numerous individuals did provide care almost immediately.  The ambulance arrived within four and one-half minutes of the shooting; other caregivers provided assistance within 35 seconds.  (Ex. A-1, Camera 4)  Based on the forgoing, Graziolli did what was required of him and this Court should grant summary judgment on Yatsko's second claim.

### 3)  Defendant is entitled to Summary Judgment on Plaintiff's Fourth, Fifth, Sixth and Ninth Claims for Relief (State Law Claims)

This Court should grant summary judgment on all the State Law Claims as each and every one of them are barred by statutory immunity, and/or alternatively are without legal basis.

#### a) State statutory immunity bars the four state law claims.  O.R.C. 2744.03(A)(6)(a)-(b) finds a political subdivision employee is immune for acts performed within the scope of his duties unless "the employee's acts or omissions were with malicious purpose, in bad faith or in wanton or reckless manner." *Caudill v. City of Columbus*, 10th Dist. Franklin No. 17AP-129, 2017-Ohio-7617, ¶21.  The statute creates a presumption of immunity, and the burden falls on Yatsko to provide sufficient evidence to rebut this presumption.  *Cook v. Cincinnati*, 103 Ohio App.3d 80, 90 (1st Dist. 1995).

Moreover, "[t]he terms willful, wanton, and reckless as used in the political subdivision liability statutes are not interchangeable." *Id* (internal citations and quotes omitted).  Willful misconduct "implies an intentional deviation from a clear duty or from a definite rule of conduct, a deliberate purpose not to discharge some duty necessary to safety, or purposefully doing wrongful acts with knowledge or appreciation of the likelihood of resulting injury." *Id.*  Wanton misconduct "is the failure to exercise any care toward those to whom a duty of care is owed in circumstances in which there is great probability that harm will result." *Id.*  This is more than "mere negligence." *Cook* at 91.  Reckless conduct is "the conscious disregard of or indifference

16

to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct." *Id.* "Bad faith involves a dishonest purpose, conscious wrongdoing, the breach of a known duty through some ulterior motive or ill will, as in the nature of fraud, or an actual intent to mislead or deceive another." *DiLuzio v. Vill. of Yorkville, Ohio*, 796 F.3d 604, 612 (6th Cir. 2015) (citing Cook v. Cincinnati, 103 Ohio App.3d 80, 658 N.E.2d 814, 821 (1995)). For purposes of Ohio law, "a public employee acts with malicious purpose if he 'willfully and intentionally acts with a purpose to cause harm.'" *Hidden Vill., LLC v. City of Lakewood, Ohio*, 734 F.3d 519, 529–30 (6th Cir. 2013) (internal citations omitted)

Here, as set forth above, Graziolli was acting within the scope of his statutory duties to preserve the peace, protect persons and property and obey and enforce Cleveland City Ordinances at the time Yatsko physically assaulted Graziolli. Graziolli's actions, and reaction to Yatsko's aggression, was not for a malicious purpose, in bad faith or in wanton or reckless manner. It is indisputable that Yatsko knew Graziolli was a police officer. Even with this knowledge, Yatsko initiated a physical altercation with Graziolli. Even after Graziolli's numerous warnings to stop and attempts to diffuse the situation, Yatsko kept advancing on, and physically striking Graziolli. Yatsko can even be seen spitting on him. Yatsko continued his assault even after Graziolli pulled his pistol and pointed it at him. Yatsko was even heard saying you will have to kill me. It was not until it became apparent that Yatsko was not going to heed Graziolli's warnings to stop and leave did he pull his pistol and then it was not until after Yatsko continued his assault on Graziolli that Graziolli, fearing for his safety, discharged his weapon. Accordingly, since Graziolli was acting within his scope of duties, and did not act with malicious purpose, in bad faith or in wanton or reckless manner, he is entitled to statutory immunity and this Court should grant summary judgment on Yatsko's State Law Claims.

### *b) Each of the four state claims fail even independent of statutory immunity.*

**i) Assault and Battery**.  Assault is a "willful threat or attempt to harm or touch another offensively, coupled with a definitive act by one who has an apparent present ability to do harm or to commit the offenses of touching."  *Johari v. City of Columbus Police Dep't*, 186 F. Supp. 2d 821, 833 (S.D. Ohio 2002) (internal citations omitted) A battery is "a harmful or offensive touching of another person. *Id*. To establish a claim for assault and battery, Yatsko must show Graziolli "unlawfully touched him with the intent of inflicting injury or creating the fear of injury." *Id*.  Furthermore, the affirmative defense of self-defense negates a claim for assault and battery.  To establish self-defense Graziolli must show:

> 1) [he] was not at fault in creating the situation giving rise to the affray; (2) [he] had a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of such force; and (3) [he] did not violate any duty to retreat or avoid the danger.

*Niskanen v. Giant Eagle, Inc.*, 122 Ohio St. 3d 486, 2009-Ohio-3626, ¶ 23, 492, 912 N.E.2d 595, ¶23.

As clearly set forth above, Graziolli did not initiate the altercation, he had a bona fide belief he was in imminent danger and of a great bodily harm as Yatsko had already been involved in numerous fights and was advancing on, striking and spitting on Graziolli with the knowledge he was a police officer and Yatsko's aggression continued even after Graziolli pulled his weapon.  Finally, Graziolli was nearly backed to a wall when he discharged his weapon.  Accordingly, Graziolli is not liable for the tort assault and battery and, furthermore, his actions in shooting Yatsko were justified pursuant to self-defense.  Therefore, this Court should grant summary judgment on assault and battery.

**ii) Negligence.**  The elements for negligence are: 1) the existence of a duty; 2) breach of that duty; and 3) harm proximately caused by the breach.  *Mussivand v. David*, 45 Ohio St.3d

314, 315, 544 N.E.2d 265 (1989). While a defendant may be negligent that negligence can be negated by the plaintiff's assumption of the risk.

Under implied assumption of the risk, "defendant owes to plaintiff some duty, but it is plaintiff's acquiescence in or appreciation of a known risk that acts as a defense to plaintiff's action." *Sanders v. Frank*, 11th Dist. Trumbull No. 2014-T-0074, 2015-Ohio-3644, ¶ 37.

Here, while there is no evidence of what duty Grazzioli owed to an individual who instigated a fight and refused to back down even after several warnings and Graziolli pulling his weapon. Even if a duty could be found, Yatsko assumed the risk as he either acquiesced to the risk or appreciated the risk of the drawn pistol as he did not cease his assault. Yatsko repeated striking of Graziolli after he pulled his weapon is clear evidence of this as are Yatsko's own words that Graziolli was going to have to kill him. Accordingly, summary judgement should be grant on Yatsko's Fifth Claim for negligence.

**iii) Intentional reckless of emotional distress.** The prima facie elements of a claim for intentional or reckless infliction of emotional distress are: (1) that the actor either intended to cause emotional distress or knew or should have known that actions taken would result in serious emotional distress to the plaintiff, (2) that the actor's conduct was so extreme and outrageous as to go "beyond all possible bounds of decency" and was such that it can be considered as "utterly intolerable in a civilized community," (3) that the actor's actions were the proximate cause of plaintiff's psychic injury, and (4) that the mental anguish suffered by plaintiff is serious and of a nature that "no reasonable man could be expected to endure it. *Pyle v. Pyle* 463 N.E.2d 98, 103 (Ohio 1983), "[A]n action to recover for emotional distress may not be premised upon mere embarrassment or hurt feelings, but must be predicated upon a psychic injury that is both severe and debilitating." *Uebelacker v. Cmcom Systems Inc.* 549 N.E.2d 1210, 1220 (Ohio Ct. App. 1988).

Here, as abundantly set forth above, the uncontroverted facts and evidence clearly show Graziolli's actions were not extreme or outrageous.  A uniformed police officer defending against a violent physical attack which can cause serious physical injury is not extreme or outrageous.  In Ohio, it is clear that the self-defense acts of Graziolli to the outrageous conduct and physical harm being repeated inflicted by Yatsko  is not "outrageous and extreme by all bounds of decency"  The Sixth Circuit has noted that establishing a *prima facie* case of intentional infliction of emotional distress under Ohio law is difficult because "to say that Ohio Courts narrowly define extreme and outrageous conduct would be an understatement."  *Norman v. City of Lorain* 2006 WL 3337466 at * 2 (N.D. Ohio Nov. 16 2006) (citation omitted).  Just like Judge Oliver concluded in *Norman,* so too it would not be characterized as utterly intolerable in a civilized community that Graziolli be able to use deadly force to defend against repeated unstopping beatings to his head and face intended to cause serious physical harm and likely to overpower him to take control of his weapon to kill him.  After all, the Cuyahoga County Ohio grand jury elected to not indict him for any criminal wrong doing.  Still, the timing and rapidly evolving nature of events can accurately determine form the and the deposition which contains Graziolli's recollections.  The entire encounter conclusively shows Graziolli's actions were reasonable beyond doubt.

### iv) Wrongful death

Since Graziolli is not liable under assault and battery or negligence, and there was no malicious intent he cannot be liable for wrongful death.

### V. **Conclusion**

For the reasons set forth above summary judgment is eminently appropriate and should be award in favor of Defendant Sergeant Dean Graziolli.

## CERTIFICATE OF SERVICE

A true copy of the foregoing was served upon the following via the Court's electronic filing system:

Jeremy A. Tor
Nicholas A. DiCello
Spangenberg, Shibley & Liber
1001 Lakeside Avenue, E., Suite 1700
Cleveland, Ohio 44114
(jtor@spanglaw.com)
(ndicello@spanglaw.com)
*Attorneys for Plaintiffs*

Michael Joseph Pike
City of Cleveland – Dept. of Law
601 Lakeside Avenue, Suite 106
Cleveland, Ohio 44114
(jcappara@city.cleveland.oh.us)
(mpike@city.cleveland.oh.us)
*Attorneys for Defendant, City of Cleveland*

Patrick M. Roche
Collins, Roche, Utley & Garner LLC
800 Westpoint Parkway
Westlake, Ohio 44145
(pmroche@cruglaw.com)
*Attorney for Defendants,*
*MRN Enterprises, LLC*
*MRN Development Corporation*
*Corner Alley, LLC*
*Corner Alley Uptown, LLC*
*Corner Alley Fourth Limited Partnership*

Thomas Cabral
Joseph Monroe
Gallagher Sharp LLP
1501 Euclid Avenue, 6th Floor
Cleveland, Ohio 44115
(tcabral@gallaghersharp.com)
(jmonroe@gallaghersharp.com)
*Attorneys for Defendant, 629 Euclid Ltd.*

/s/David M. Leneghan_____

David M. Leneghan